UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.: 8:22-cv-01792-FWS-DFM                                Date: November 24, 2025
Title: Securities and Exchange Commission v. Vivera Pharmaceuticals, Inc. *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| Rolls Royce Paschal | N/A |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**PROCEEDINGS: ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [92]**

In this case, Plaintiff Securities and Exchange Commission (the "SEC") alleges that Defendants Vivera Pharmaceuticals, Inc. ("Vivera"), EFT Global Holdings, Inc., d/b/a Sentar Pharmaceuticals ("Sentar"), and Paul P. Edalat ("Edalat") (collectively, "Defendants") violated federal securities laws. (*See generally* Dkt. 1 (Complaint).) Before the court is the SEC's Motion for Summary Judgment. (Dkt. 92 ("Motion" or "Mot.").) Defendants oppose the Motion. (Dkt. 104 ("Opp.").) The SEC filed a reply in support of the Motion. (Dkt. 108 ("Reply").) The parties' positions regarding undisputed facts are set forth in the SEC's Response to Statement of Genuine Disputes of Material Fact. (Dkt. 108-1 ("SGD").) The court held a hearing on the Motion on November 20, 2025. (Dkt. 110.) Based on the record, as applied to the relevant law, the Motion is **GRANTED**.

**I.    Background**

Edalat founded Sentar in 2013 and was the controlling shareholder of Sentar during the time period relevant to this case. (SGD ¶¶ 1-2, 4.) Sentar owned the intellectual property rights to a sublingual drug-delivery technology, which could deliver substances to the body by dissolving under a person's tongue. (*Id.* ¶ 5.) In January 2017, Sentar entered into a license agreement conveying a license concerning Sentar's sublingual drug-delivery technology to Alternate Health Corp. and Alternate Health USA Inc. (together, "Alternate Health") (the "Alternate Health Agreement"). (*Id.* ¶¶ 6-8; Dkt. 92-4, Ex. 8.) In exchange for the license, Alternate Health agreed to provide Edalat 850,000 shares of Alternate Health stock. (SGD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01792-FWS-DFM                          Date: November 24, 2025
Title: Securities and Exchange Commission v. Vivera Pharmaceuticals, Inc. *et al.*

¶ 11.)  Edalat signed the Alternate Health Agreement on behalf of Sentar.  (SGD ¶ 8.)  Howard Mann, Alternate Health's CEO, was Alternate Health's "point man" during Sentar's dealings with Alternate Health.  (*Id.* ¶ 12.)

Vivera, a company incorporated in Delaware in April 2018, planned to conduct an initial public offering on the Canadian Stock Exchange with the assistance of Mackie Research Capital Corporation.  (*Id.* ¶¶ 3, 20.)  Edalat, who was appointed to be the sole member of Vivera's Board of Directors, adopted a Unanimous Written Consent ("UWC") of Vivera's Board of Directors that appointed Edalat to serve as the Chairman of Vivera's Board of Directors, as well as Vivera's President, Chief Executive Officer, Chief Financial Officer, and Treasurer.  (*Id.* ¶ 21-22.)  Edalat was Vivera's CEO and Chairman of Vivera's Board of Directors throughout the time period relevant to this case.  (*Id.* ¶ 23.)

In April 2018, Sentar and Vivera entered into a license agreement pursuant to which Sentar granted Vivera "the exclusive worldwide right" to use Sentar's sublingual drug-delivery technology in pharmaceutical products, including pharmaceutical products that used the technology and that contained cannabinoids[1] (the "Vivera Agreement"), thereby conveying to Vivera rights to the same technology as the Alternate Health Agreement.  (*Id.* ¶ 27.)  Sentar also conveyed the right to use the "Tambelt" trademark to Vivera under the Vivera Agreement.  (*Id.* ¶ 29.)  Edalat signed the Vivera Agreement on behalf of Sentar and Olivia Karpinski, a co-founder of Vivera and Vivera's Vice President of Sales, signed on behalf of Vivera.  (*Id.* ¶¶ 32-33.)  Under the Vivera Agreement, Vivera agreed to issue 20,000,000 shares of Vivera common stock to Sentar, which Sentar received.  (*Id.* ¶¶ 39-40.)  In addition, among other "License Fees," Vivera agreed to pay Sentar an "Up-Front Fee" in the amount of $10 million upon execution of the agreement.  (*Id.* ¶ 35.)  Vivera did not pay the $10 million "Up-Front Fee" to Sentar upon execution of the Vivera Agreement, but rather recorded the $10 million "Up-Front Fee" as a current liability (the "Sentar Liability") on its balance sheet.  (*Id.* ¶¶ 36-37.)  Vivera made payments to Sentar to pay down the Sentar Liability over time.  (*Id.* ¶ 38.)

---

[1] "Cannabinoids are a group of substances found in the cannabis plant.  The main cannabinoids are tetrahydrocannabinol (THC) and cannabidiol (CBD)."  (*Id.* ¶ 28.)

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01792-FWS-DFM                              Date: November 24, 2025
Title: Securities and Exchange Commission v. Vivera Pharmaceuticals, Inc. *et al.*
_____

On May 26, 2018, Edalat, as the sole member of Vivera's Board of Directors, adopted a UWC approving Vivera's execution of the Vivera Agreement. (*Id.* ¶ 34.) On the same date, Edalat also adopted a UWC approving the issuance of 75,000,000 shares of Vivera common stock to Edalat, which Edalat received; 20,000,000 shares to Sentar; and 5,000,000 shares to Karpinski. (*Id.* ¶¶ 24-25, 31, 34.) Edalat was therefore the controlling shareholder of Vivera. (*Id.* ¶ 26.) On the same date, Edalat adopted a UCC approving the sale, in a private placement offering, of up to 3,000,000 "units" at a price of $1 per "unit," with each "unit" consisting of one share of Vivera common stock and one warrant to purchase a share of Vivera common stock within three years at an exercise price of $3 per share. (*Id.* ¶ 51.) In this UWC, Edalat "authorize[d] and approve[d]" the form of Private Placement Memorandum ("PPM") and Subscription Agreement ("Subscription Agreement") that would be provided to prospective Vivera investors in connection with Vivera's private placement offering. (*Id.* ¶ 52.) Vivera investors purchased shares of Vivera stock pursuant to Vivera's PPM. (*Id.* ¶ 53.) Prospective investors agreed to purchase shares of Vivera by submitting signed Subscription Agreements, which were typically accepted and signed by or on behalf of Edalat as Chairman of Vivera. (*Id.* ¶ 54.) Investors in Vivera sent their investment funds to a Vivera bank account via wire transfer. (*Id.* ¶ 55.)

In 2018, Mann learned that Sentar had purportedly conveyed to Vivera an exclusive license to use Sentar's sublingual drug-delivery technology in pharmaceutical products containing cannabinoids, such as CBD and THC. (*Id.* ¶ 41.) Mann, through counsel, notified Edalat that any such license infringed on Alternate Health's license under the Alternate Health Agreement to use Sentar's sublingual drugdelivery technology in both pharmaceutical and non-pharmaceutical products containing CBD or THC. (*Id.*)

In December 2018, Vivera filed a complaint against Alternate Health in the Superior Court of California in Los Angeles County. (*Id.* ¶¶ 42-44.) Vivera sought a declaratory judgment that the Alternate Health Agreement was limited to non-pharmaceutical, or nutraceutical, products, and that Vivera could use Sentar's sublingual drug-delivery technology for pharmaceutical products without infringing on the Alternate Health Agreement. (SGD ¶ 45.)

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01792-FWS-DFM                                    Date: November 24, 2025
Title: Securities and Exchange Commission v. Vivera Pharmaceuticals, Inc. *et al.*

    In May 2019, Alternate Health filed a first amended cross-complaint against Vivera, seeking a judicial declaration that Alternate Health held an exclusive license to use Sentar's sublingual drug-delivery technology in both pharmaceutical and nonpharmaceutical products containing CBD or THC.  (*Id.* ¶¶ 46-47.)

    On May 15, 2020, the Superior Court entered judgment in favor of Alternate Health, declaring that the license granted under the Alternate Health Agreement included both non-pharmaceutical products and pharmaceutical products containing CBD or THC that used Sentar's sublingual drug-delivery technology.  (*Id.* ¶ 49.)  On April 23, 2021, the Court of Appeal of the State of California for the Second Appellate District affirmed the Superior Court's judgment.  (*Id.* ¶ 50.)

    Vivera issued multiple versions of the PPM in connection with its private placement offering, with versions dated April 27, 2018; June 4, 2019; October 31, 2019; January 10, 2020; March 2, 2020; and May 12, 2020.  (*Id.* ¶ 57.)  Edalat reviewed and approved the language in each version of Vivera's PPM before it was distributed to prospective Vivera investors.  (*Id.* ¶ 62.)  Gordon Malic of Mackie Research Capital Corporation assisted Edalat and Vivera with raising funds from investors pursuant to Vivera's PPM.  (*Id.* ¶ 60.)

    Every version of the Vivera PPM stated at page 1 that Vivera held "an exclusive, global license" to the "Tabmelt sublingual drug-delivery system for the pharmaceutical use of cannabinoids," and that "Vivera's lead proprietary drug candidates and first drugs to market are expected to be cannabidiol-based (CBD) pharmaceuticals potentially for pain and inflammation indications, neuropathy and opioid addiction therapy."  (*Id.* ¶¶ 75, 77.)  Under "Risk Factors," Vivera disclosed: "[W]e expect to incur operating losses until we are able to derive meaningful revenues from our cannabinoid products."  (*Id.* ¶ 79.)  However, no version of the PPM disclosed that there was a dispute between Vivera and Alternate Health as to whether Vivera could use Sentar's sublingual drug-delivery technology in pharmaceutical products containing CBD or THC without infringing on Alternate Health's license, including any reference to the lawsuit in PPMs issued after the lawsuit was filed.  (*Id.* ¶¶ 80, 84, 86.)  Edalat did not disclose the dispute to investors in some other way.  (*Id.* ¶ 83.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01792-FWS-DFM                                                         Date: November 24, 2025
Title: Securities and Exchange Commission v. Vivera Pharmaceuticals, Inc. *et al.*

The SEC also contends that Vivera also failed to disclose in any version of its PPM that Vivera owed the multimillion-dollar Sentar Liability to Sentar for the license rights that Sentar had purportedly conveyed to Vivera under the Vivera Agreement.  (*Id.* ¶ 87.)

Approximately 63 investors invested in Vivera, including at least 12 investors from the United States, with a total of $6.7 million raised from Vivera investors through its private placement offering (the "Vivera Investor Proceeds").  (*Id.* ¶¶ 64-65.)

Vivera paid Sentar at least $4 million to pay down the Sentar Liability, at least $1.8 million of which were Vivera Investor Proceeds.  (*Id.* ¶¶ 69-71.)  "During the period of June 1, 2018, through August 31, 2020, Edalat used at least $328,613 of Vivera Investor Proceeds that he had received through Sentar for personal housing and automobile-related purchases." (*Id.* ¶ 72.)

On May 27, 2022, Sentar filed a complaint against Alternate Health seeking a declaration that the Sentar-Alternate Health License terminated no later than October 2017, when Alternate Health filed a claim asserting patent invalidity.  (*Id.* ¶¶ 122-23.)  Alternate Health initially participated in the case, (*id.* ¶¶ 124, 128), but it then failed to appear for the May 2025 trial, (*id.* ¶ 129f).  When Alternate Health failed to appear at the next hearing on June 4, 2025, the Superior Court entered declaratory judgment in favor of Sentar, which counsel for Sentar drafted.  (*Id.* ¶ 129.i.)  The June 2025 declaratory judgment stated that the Sentar-Alternate Health license terminated on October 12, 2017.  (*Id.* ¶ 129.j.)

## II.     Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the case, and the "substantive law [] identif[ies] which facts are material."  *Id.*  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01792-FWS-DFM                                              Date: November 24, 2025
Title: Securities and Exchange Commission v. Vivera Pharmaceuticals, Inc. *et al.*

    The moving party bears the initial burden of identifying the elements of the claim or defense on which summary judgment is sought and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party will have the burden of proof at trial, the movant can satisfy its initial burden by demonstrating that there is an absence of evidence to support the non-moving party's case. *Id.* at 325; *see also Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) ("The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact."). The non-moving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation omitted); *see also Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (in opposing summary judgment, "the non-moving party must go beyond the pleadings and by its own evidence 'set forth specific facts showing that there is a genuine issue for trial'"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1389 (9th Cir. 1990) ("The non-moving party may not oppose summary judgment by allegations but must show specific trial-worthy facts."). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The court must draw all reasonable inferences in the non-moving party's favor. *In re Oracle Corp*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 255).

    Nevertheless, "inferences are not drawn out of thin air, but from evidence." *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1247 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). "[S]ummary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48; *see also United States v. Fred A.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01792-FWS-DFM                                           Date: November 24, 2025
Title: Securities and Exchange Commission v. Vivera Pharmaceuticals, Inc. *et al.*

*Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978) ("A summary judgment cannot be granted if a genuine issue as to any material fact exists.").

### III. Discussion

The SEC alleges Defendants "violated Section 17(a)(1) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(1) and 77q(a)(3); and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5(a) and 10b-5(c) thereunder, 17 C.F.R. §§ 240.10b-5(a) and 240.10b-5(c)," and also "violated Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2); and Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder, 17 C.F.R. § 240.10b-5(b)." (Compl. ¶ 9; *see id.* ¶¶ 56-75; *see also* Mot. at 1-2, 12-20.) The SEC now moves for summary judgment on all of these claims.

"Section 17(a) of the 1933 Act, Section 10(b) of the 1934 Act, and Rule 10b-5 'forbid making [1] a material misstatement or omission [2] in connection with the offer or sale of a security [3] by means of interstate commerce.'" *SEC v. Phan*, 500 F.3d 895, 907 (9th Cir. 2007) (quoting *SEC v. Dain Rauscher*, 254 F.3d 852, 856 (9th Cir. 2001)). These antifraud provisions prohibit both "schemes to defraud[] and . . . 'making a material misstatement or omission in connection with the offer or sale of a security by means of interstate commerce.'" *SEC v. Stein*, 906 F.3d 823, 830 (9th Cir. 2018) (quoting *Dain Rauscher*, 254 F.3d at 855–56). "[V]iolations of Section 17(a)(1), Section 10(b) and Rule 10-b5 require scienter, while violations of Sections 17(a)(2) and (3) require a showing of negligence." *Id.* (citing *Dain Rauscher*, 254 F.3d at 856). The court analyzes these elements in turn.

#### A.   Misstatements or Omissions

The SEC argues Defendants made two misrepresentations or omissions: one regarding Vivera's purported "exclusive, global license" to Sentar's sublingual drug-delivery system for the pharmaceutical use of cannabinoids, and the other regarding how investor funds would be used, in particular without disclosing that Vivera would be paying a $10 million license fee to Sentar, which Edalat would personally profit from. (Mot. at 12-15.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01792-FWS-DFM          Date: November 24, 2025
Title: Securities and Exchange Commission v. Vivera Pharmaceuticals, Inc. *et al.*

        1.       **License**

The first misrepresentation or omission is that "[e]very version of the Vivera PPM contained – on page one – the false statement that the company held 'an exclusive, global license' to Sentar's 'sublingual drug-delivery system for the pharmaceutical use of cannabinoids," when in fact "a year earlier, Edalat had conveyed the same Sentar technology to Alternate Health as an 'exclusive license for the use of CBD and THC,' making Vivera's claim to an exclusive license false." (Mot. at 12-13 (citations omitted).) Defendants do not contest that the statement regarding the license was made, and the undisputed evidence demonstrates that it was. (SUF ¶ 75 (collecting references to different versions of the PPM).)

        2.       **Use of Funds**

The second misrepresentation or omission is that "every single Vivera PPM misrepresented how investor funds would be used" by describing how investor funds would be used without disclosing that Vivera "would be paying a $10 million license fee to Sentar," and "Edalat himself would profit from the fees it paid to Sentar." (Mot. at 13-14.) Defendants argue they did not make this misrepresentation or omission, as investors actually did receive this information, or that at the very least there is "evidence create[ing] and issue of fact as to whether the investors received the information." (Opp. at 22.) Specifically, Defendants argue they "prepared a use of proceeds table which was part of the business plan" and "sent the finalized use of proceeds table to Malic," "instruct[ing] Malic to provide a copy of the ppm with business plan and company presentation to all investors, and "[t]here is substantial evidence these instructions were followed." (Opp. at 19-20.) "Thus, the ppm and incorporated business plan (with use of proceeds table) plus company presentation, disclosed all of the information SEC incorrectly claims was 'withheld' from investors. (Opp. at 21.)

The court finds that Defendants fail to raise a genuine dispute of material fact regarding whether the alleged misrepresentation or omission regarding use of funds was made. First, Gordon Malic stated that the PPMs, including the "use of proceeds" section, did not disclose that investor funds would be used to pay Sentar $10 million in licensing fees. (Dkt. 92-10, Ex. 39 (Declaration of Gordon Malic) ¶ 16.) The evidence on which Defendants rely confirms this. In particular, the only final version of a use of proceeds table reflected in a business plan

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.: 8:22-cv-01792-FWS-DFM | Date: November 24, 2025 |
| Title: Securities and Exchange Commission v. Vivera Pharmaceuticals, Inc. *et al.* | |

that Defendants submit reflects a gross offering amount of $23 million. (Dkt. 101-11.) However, the PPMs relevant to the offering at issue in this case reflect maximum offering amounts of $3 million, (Stillwell Decl. Exs. 13, 14), $5 million (*id.* Exs. 15, 17), $9 million (*id.* Ex. 18), $15 million (*id.* Ex. 19), or $20 million, (*id.* Ex. 16)—never $23 million. The SEC explains that the use of proceeds table Defendants reference relates to a separate initial public offering of Vivera stock in Canada. (Reply at 2, 14-15; *see also* SGD ¶ 35 (SEC's Response containing other responses to Defendants' arguments).) Whatever the explanation, the court finds that no reasonable jury could conclude based on the evidence in the record that the misrepresentation or omission regarding use of funds was not made.

Defendants further argue that even if made, Malic was the "maker" of the use of funds misrepresentation or omission, not Defendants. (Opp. at 25.) "For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. . . . One who prepares or publishes a statement on behalf of another is not its maker." *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142–43 (2011). Even drawing all reasonable inferences in Defendants' favor, *In re Oracle Corp*, 627 F.3d at 387, the court finds no reasonable jury could conclude that Defendants were not the "makers" of the use of funds misrepresentation or omission.

### B.  Materiality

The court turns to whether the alleged misrepresentations and omissions were material. "The standard of materiality is an objective one." *United States v. Jenkins*, 633 F.3d 788, 802 (9th Cir. 2011) (citing *United States v. Reyes*, 577 F.3d 1069, 1076 (9th Cir. 2009)). This standard will be "satisfied only if there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'" *Phan*, 500 F.3d at 908 (quoting *Basic v. Levinson*, 485 U.S. 224, 231-32 (1988)). Although "[d]etermining materiality in securities fraud cases 'should ordinarily be left to the trier of fact,'" materiality may appropriately be resolved at summary judgment where "the established omissions are 'so obviously important to an investor that reasonable minds cannot differ on the question of materiality.'" *Id.* (quoting first *In re Apple Computer Secs. Litig.*, 886 F.2d 1109, 1113 (9th Cir. 1989), then *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976)).

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01792-FWS-DFM                                   Date: November 24, 2025
Title: Securities and Exchange Commission v. Vivera Pharmaceuticals, Inc. *et al.*

The SEC argues Defendants' misrepresentation regarding the license and omission regarding the use of funds were material. The court agrees.

    **1.    License**

The PPM explained on the first page that "Vivera's lead proprietary drug candidates and first drugs to market are expected to be cannabidiol-based (CBD) pharmaceuticals potentially for pain and inflammation indications, neuropathy and opioid addiction therapy." (SGD ¶ 77.) To that end, the PPM stated that Vivera held "an exclusive, global license" to the "Tabmelt sublingual drug-delivery system for the pharmaceutical use of cannabinoids" appeared on the first page of every PPM. (*Id.* ¶ 75.) In other words, the "lead proprietary drug candidates" that were central to Vivera's business were drugs using the sublingual drug-delivery technology Vivera stated it had "an exclusive, global license" to use. (*Id.* ¶ 78.) The PPM also disclosed under "Risk Factors," "we expect to incur operating losses until we are able to derive meaningful revenues from our cannabinoid products." (*Id.* ¶ 79.) Under these circumstances, the court finds the failure to disclose "that there was a dispute between Vivera and Alternate Health as to whether Vivera could use Sentar's sublingual drug-delivery technology in pharmaceutical products containing CBD or THC without infringing on Alternate Health's license" was "so obviously important to an investor that reasonable minds cannot differ on the question of materiality." *Phan*, 500 F.3d at 908; *SEC v. Murphy*, 626 F.2d 633, 653 (9th Cir. 1980) ("Surely the materiality of information relating to financial condition, solvency, and profitability is not subject to serious challenge."). Indeed, five investors declare that "they would not have invested in Vivera (1) if they had known there was another exclusive license granted over the same technology that Vivera claimed to own, (2) if they had known about the license dispute with Alternate Health, or (3) if they had known about the related litigation." (Mot. at 16.)

Defendants argue "[t]here is an issue of fact, at a minimum, as to whether the omitted information was material" because the Alternate Health "dispute was over the scope of the license, not its duration," and "Defendants had reasonable legal grounds to believe, and did believe in good faith, and were correct in the belief, that the Sentar-[Alternate Health] license had terminated in 2017." (Opp. at 17.) The court is not persuaded. The question regarding

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01792-FWS-DFM                                         Date: November 24, 2025
Title: Securities and Exchange Commission v. Vivera Pharmaceuticals, Inc. *et al.*
___

materiality is whether "there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Phan*, 500 F.3d at 908 (quotation omitted). The evidence here reflects that at the time Defendants were making the representations in the PPMs, and during the two and a half years of litigation regarding the scope of the Alternate Health license, they did not believe the license was terminated. (Reply at 10-11 (collecting evidence citations).) Defendants' arguments regarding the June 2025 judgment that the Alternate Health license terminated in 2017, entered after Alternate Health failed to respond, do not alter this conclusion. (*See id.* at 11-12.) Again, no reasonable jury could conclude that information regarding the Alternate Health litigation would not significantly alter the total mix of information available. *See Phan*, 500 F.3d at 908.

### 2. Use of Funds

Defendants' failure to disclose that $10 million of funds raised would go toward paying Sentar a licensing fee, which Edalat would personally benefit from, was also material. Indeed, "[w]hat reasonable investor would not wish to know that the money raised by stock sales would not be used for working capital but be diverted to" an entity that would benefit Vivera's "officers? It is beyond cavil that [Defendants'] misleading statements and omissions concerned facts that were material as a matter of law." *SEC v. Rsch. Automation Corp.*, 585 F.2d 31, 35-36 (2d Cir. 1978). Confirming this, "[i]nvestors attest that if they had known about the $10 million fee owed to Sentar or if they had known that their funds would be used to pay this fee, they would not have invested." (Mot. at 16.)

Defendants argue "any alleged failure to disclose use of funds to investors, was simply not material" because "during the relevant time period, Vivera had net income of $7.3 million, more than sufficient to cover the payment to Sentar," so "[i]nvestors were not harmed, because there was unanticipated separate revenue more than sufficient to make up the requirement." (Opp. at 23.) Setting aside the fact that the evidence Defendants offer to support this statement are merely screenshots of incomplete tax returns and the complete tax retruns in the record reflect that Vivera was not profitable during the relevant time period, (Reply at 16), the word "unanticipated" in Defendants' argument is key: it was material to investors at the time they

___

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.: 8:22-cv-01792-FWS-DFM | Date: November 24, 2025 |
| Title: Securities and Exchange Commission v. Vivera Pharmaceuticals, Inc. *et al.* | |

invested that $10 million in raised funds would go toward the license fee that Edalat would personally benefit from. *See Rsch. Automation Corp.*, 585 F.2d at 35-36.

    **C.    Made In Connection with the Offer or Sale of a Security by Means of Interstate Commerce**

    With respect to Section 10b and Rule 10b-5, the "in connection with" requirement "is met if the fraud alleged 'somehow touches upon' or has 'some nexus' with 'any securities transaction.'" *SEC v. Rana Rsch.*, 8 F.3d 1358, 1362 (9th Cir. 1993) (quoting *SEC v. Clark*, 915 F.2d 439, 449 (9th Cir. 1990)). The fraud "must be done to induce the purchase at issue," *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 951 (9th Cir. 2018) (citation omitted), and must be "material to a decision by one or more individuals (other than the fraudster) to buy or sell a 'covered security,'" *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014). With respect to Section 17(a) claims, the Supreme Court has stated that the terms "in," "offer," and "sale" "are expansive enough to cover the entire selling process." *United States v. Naftalin*, 441 U.S. 768, 772-73 (1979).

    The evidence demonstrates that Defendants' misrepresentations and omissions were made in the PPM. (SGD ¶¶ 56-67.) "Material misrepresentations or omissions made in a PPM satisfy the 'in connection requirement'" of Section 10b and Rule 10b-5 and the "in the offer" requirement of Section 17(a). *U.S. Sec. & Exch. Comm'n v. Carter*, 2023 WL 9197565, at *8 (C.D. Cal. July 14, 2023) (collecting cases).

    The evidence also demonstrates that Defendants conveyed the misrepresentations and omissions via the instrumentalities of interstate commerce, including by using email to engage with investors and instructing investors to wire transfer investment funds to a Vivera bank account. (*See, e.g.*, Dkt. 68 (Declaration of Olivia Karpinski) ¶ 8, Ex. A (email Karpinski sent on behalf of Edalt or Gordon Malic to investor with Vivera's PPM, among other documents); Dkt. 92-11 (Declaration of Ronald Aquin) ¶ 8, Ex. 3 (stating that "Olivia Karpinski of Vivera emailed me Vivera's Private Placement Memorandum," with attached email reflecting that Edalat was also in the "To" line); SGD ¶ 55); *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1054 (10th Cir. 2008) ("[T]he Internet is generally an instrumentality of interstate commerce."); *SEC v. Straub*, 921 F. Supp. 2d 244, 262 (S.D.N.Y.

___

| **CIVIL MINUTES – GENERAL** | 12 |
|---|---:|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01792-FWS-DFM                                      Date: November 24, 2025
Title: Securities and Exchange Commission v. Vivera Pharmaceuticals, Inc. *et al.*

2013) ("[I]t is undisputed that the use of the internet is an 'instrumentality of interstate commerce.'")); *SEC v. Zera Fin. LLC*, 2023 WL 8269775, at *8 (C.D. Cal. Oct. 30, 2023) (finding this element met where "Defendants used Zera's website, social media accounts, and other internet platforms to engage investors"); *SEC v. Erwin*, 553 F. Supp. 3d 895, 903 (D. Colo. 2021) ("[The SEC] has further demonstrated that Defendants used interstate commerce or the mails to defraud investors; specifically, Defendants discussed the CMO Trading Program in telephone calls, sent the investment agreements by email, and directed investors to wire transfer funds to the bank accounts of Golden Summit and Mr. Erwin through interstate commerce.").

    **D.**    **Scienter**

"[S]cienter refers to 'a mental state embracing intent to deceive, manipulate, or defraud.'" *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 648 (2010) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12 (1976)). Analyzing scienter "is a subjective inquiry," which "turns on the defendant's actual state of mind." *Gebhart v. SEC*, 595 F.3d 1034, 1042 (9th Cir. 2010). As a result, "[p]roof of scienter is often based on inference from circumstantial evidence." *SEC v. Burns*, 816 F.2d 471, 474 (9th Cir. 1987). "Scienter can be established by intent, knowledge, or in some cases 'recklessness.'" *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010) (citing *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1568-69 (9th Cir. 1990) (en banc)). The "deliberate recklessness" standard entails "'an *extreme* departure from the standards of ordinary care,' which 'presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it.'" *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 701 (9th Cir. 2021) (quoting *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020)). "[A] reckless omission of material facts satisfies the element of scienter, provided that such recklessness reflects some degree of intentional or conscious misconduct." *Id.* (internal quotation marks and citations omitted).

In this case, the SEC's undisputed evidence adequately establishes that Edalat acted with scienter, which scienter can be appropriately imputed to Vivera and Sentar, two corporate entities that he controlled as CEO and Chairman and on behalf of which Edalat spoke, *see In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 473, 477 (9th Cir. 2015), and which is also sufficient to satisfy the state of mind requirement for Plaintiff's Section 17(a)(3) claim. *See SEC v. Hui Feng*, 935 F.3d 721, 734 (9th Cir. 2019) ("Although there are differences in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.: 8:22-cv-01792-FWS-DFM | Date: November 24, 2025 |
| Title: Securities and Exchange Commission v. Vivera Pharmaceuticals, Inc. *et al.* | |

state of mind requirements for Rule 10b-5(b) and Section 17(a), a showing of intentional or knowing conduct satisfies both.") (citing *Aaron v. SEC*, 446 U.S. 680, 695-97 (1980)).

###### 1. License

Edalat—as the person who signed the Alternate Health license agreement, communicated with Mann regarding the dispute with Alternate Health regarding the scope of the license, and participated in the Alternate Health litigation—knew that Vivera's statements in the PPM that Vivera had an "exclusive, global license" were wrong or misleading, yet he continued to approve them. (SGD ¶¶ 8-10, 12-17, 42, 45, 61-62.) Indeed, even after the litigation was filed, "Vivera failed to disclose, in any subsequent version of its PPM, that Vivera was involved in a civil litigation to determine whether Vivera could use Sentar's sublingual drug-delivery technology in pharmaceutical products containing CBD or THC without infringing on Alternate Health's license." (*Id.* ¶ 84.) Under these circumstances, the court finds no reasonable jury could find other than that Edalat acted with scienter. *See Platforms Wireless Int'l Corp.*, 617 F.3d at 1092; *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th at 701.

Defendants argue that "[t]he June 2025 judgment and other facts negate scienter" because "[a]t all relevant times, defendants reasonably and correctly believed there was no conflict in license because the [Alternate Health] license terminated in October 2017" and "Defendants were correct in that belief." (Opp. at 14-16; *id.* at 17 ("[T]here is [] no scienter because defendants reasonably believed the [Alternate Health] license had terminated in 2017."); *id.* at 18 ("Defendants here had ample legal justification, supported by written communications, documents, admissions by [Alternate Health] itself and other evidence, that the Sentar-[Alternate Health] license in fact terminated in 2017, and that therefore any dispute as to its scope in 2018 was immaterial.").) But as explained above, the contemporaneous evidence (in contrast to the 2025 judgment on a case filed in 2022) reflects that Defendants consistently argued during the relevant time period that the license had *not* been terminated. *See* Section III.B. Regardless, the undisputed evidence demonstrates that Edalat knew there was a competing Alternate Health license, that there was ongoing litigation surrounding the scope of that license, and that the exclusivity of Vivera's license was central to Vivera's success. (RSGD ¶¶ 6- 10, 13-15, 75-79; Reply at 10-11); *see Platforms Wireless Int'l Corp.*, 617 F.3d at 1094 ("[A] defendant ordinarily will not be able to defeat summary judgment by the mere

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.: 8:22-cv-01792-FWS-DFM | Date: November 24, 2025 |
| Title: Securities and Exchange Commission v. Vivera Pharmaceuticals, Inc. *et al.* | |

denial of subjective knowledge of the risk that a statement could be misleading"). Again, under these circumstances, the court finds no reasonable jury could find other than that Edalat acted with scienter. *See Platforms Wireless Int'l Corp.*, 617 F.3d at 1092; *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th at 701.

### 2. Use of Funds

Edalat knew that $10 million in investor funds would pay for the Sentar license, which he would personally benefit from; for similar reasons that this omission was unquestionably material, the court finds no reasonable jury could find other than that Edalat acted with scienter in failing to disclose this information. *See Platforms Wireless Int'l Corp.*, 617 F.3d at 1092; *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th at 701.

Defendants argue "[t]here can [] be no scienter, because defendants provided the materials to Malic with instructions to disseminate same to investors." (Opp. at 25.) Even if this were true, and the SEC provides evidence that it is not, (Reply at 18), the fact remains that Edalat approved PPMs without this material information, and failing to disclose this information shows, at the very least, "recklessness reflect[ing] some degree of intentional or conscious misconduct." *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th at 701.

### E. Scheme Liability

"The securities fraud provisions . . . prohibit any person, in the offer or sale of securities, 'to employ any device, scheme, or artifice to defraud' or 'to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.'" *Hui Feng*, 935 F.3d at 736 (quoting 15 U.S.C. §§ 77q(a)(1), (3)). "[T]hese provisions capture a wide range of conduct," and "dissemination of false or misleading statements with intent to defraud can fall within the scope of subsections (a) and (c) of Rule 10b–5, as well as [section 17(a)(1)]." *Lorenzo*, 139 S. Ct. at 1101. As discussed above, "[t]he state of mind requirement varies among these provisions, but a showing of intentional or knowing conduct clears all thresholds." *Hui Feng*, 935 F.3d at 736 (citing *Aaron v. SEC*, 446 U.S. 680, 695-97 (1980)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01792-FWS-DFM                                    Date: November 24, 2025
Title: Securities and Exchange Commission v. Vivera Pharmaceuticals, Inc. *et al.*

The court finds the SEC's undisputed evidence demonstrates that Defendants engaged in conduct that "had the principal purpose and effect of creating a false appearance of fact in furtherance of a scheme" by disseminating PPMs with material misrepresentations and omissions regarding license rights and use of funds. *Simpson v. AOL Time Warner, Inc.,* 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other grounds by Simpson v. Homestore.com*, 519 F.3d 1041, 1041-42 (9th Cir. 2008); (*see* Reply at 17 (including record references and caselaw supporting this)).

   **F.    Summary**

In summary, the court finds the SEC met its initial burden of demonstrating an absence of genuine issues of material fact with respect to each element of its Section 17(a), Section 10(b), and Rule 10b-5 claims. *C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480; *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to Defendants to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Even viewing the facts in the light most favorable to Defendants, for the reasons described in the preceding sections, the court finds Defendants have failed to meet their shifted burden.

In addition, the court observes that Edalat failed to respond to the SEC's requests for admission ("RFAs"). (*See* Dkt. 97.) Despite receiving a clear opportunity to seek relief from having those requests for admission deemed admitted, Edalat failed to seek such relief within the deadline, and the court declined to extend the deadline further. (*See id.*) Edalat's unanswered RFAs are deemed admitted. Fed. R. Civ. P. 36 ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."); *F.T.C. v. Medicor LLC*, 217 F. Supp. 2d 1048, 1053 (C.D. Cal. 2002) ("Failure to timely respond to requests for admissions results in automatic admission of the matters requested. No motion to establish the admissions is needed because Federal Rule of Civil Procedure 36(a) is self executing.") (internal citations omitted). These admissions are further support for the court's conclusions in this order. (*See* Reply at 9 n.3 ("Given the comprehensiveness of the SEC's RFAs, Edalat has conceded that the Court must grant the SEC's Further MSJ if the RFAs are deemed admitted.").)

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.: 8:22-cv-01792-FWS-DFM                                    Date: November 24, 2025
Title: Securities and Exchange Commission v. Vivera Pharmaceuticals, Inc. *et al.*

___

### IV.  Disposition

For the reasons stated above, the Motion is **GRANTED**.  The SEC states that "[i]f the Court grants the SEC's motion, the SEC will separately seek leave to file a remedies motion regarding the appropriate amount of disgorgement and civil penalties to be imposed for Defendants' violations, as well as the appropriate injunctive relief to be imposed against Defendants." (Mot. at 20.)  The court **ORDERS** the SEC to file such a motion on or before **December 24, 2025**.

___