STEPHEN KAM (Cal. Bar No. 327576)
Email:  kams@sec.gov
ROBERT C. STILLWELL (Cal. Bar No. 308630)
Email:  stillwellr@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Brent W. Wilner, Associate Director
Stephen Kam, Supervisory Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### Southern Division

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>VIVERA PHARMACEUTICALS, INC., EFT GLOBAL HOLDINGS, INC., d/b/a SENTAR PHARMACEUTICALS, and PAUL P. EDALAT,<br><br>Defendants. | Case No. 8:22-cv-01792-FWS-DFM<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR REMEDIES AND ENTRY OF FINAL JUDGMENTS AGAINST DEFENDANTS VIVERA PHARMACEUTICALS, INC., EFT GLOBAL HOLDINGS, INC., d/b/a SENTAR PHARMACEUTICALS, AND PAUL P. EDALAT**<br><br>Date:       May 21, 2026<br>Time:       10:00 am<br>Ctrm:       Santa Ana, 10D<br>Judge:      Hon. Fred W. Slaughter |

**TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................1

II.   BACKGROUND .....................................................................................1

III.  ARGUMENT ..........................................................................................3

      A.   Defendants Should Disgorge Their Ill-Gotten Gains with Interest. ....3

      B.   Edalat Should Pay a Civil Penalty. ......................................................5

      C.   Defendants Should Be Permanently Enjoined. .....................................7

           1.   Success on the merits ..................................................................8

           2.   Irreparable harm .........................................................................8

           3.   Balance of equities .....................................................................9

           4.   Public interest.............................................................................9

      D.   A Conduct-Based Injunction against Edalat and Vivera Is
           Appropriate.........................................................................................9

      E.   Edalat Should Be Prohibited from Serving as an Officer or Director
           for Five Years. ...................................................................................11

IV.   CONCLUSION......................................................................................12

# TABLE OF AUTHORITIES

## CASES

*Amoco Prod. Co. v. Village of Gambell, AK,*
480 U.S. 531 (1987)................................................................................7

*Liu v. SEC,*
140 S. Ct. 1936 (2020).....................................................................3, 4, 5

*Off. Comm. Of Unsecured Creditors of WorldCom, Inc. v. SEC*
467 F.3d 73 (2d Cir. 2006) .....................................................................5

*SEC v. Alexander,*
115 F. Supp. 3d 1071 (N.D. Cal. 2015)..................................................6

*SEC v. Baccam,*
No. ED CV 17-0172 SJO (SPx), 2017 U.S. Dist. LEXIS 88450
(C.D. Cal. June 8, 2017) ......................................................................10

*SEC v. Barry,*
146 F.4th 1242 (9th Cir. 2025)............................................................7, 8

*SEC v. Barton,*
135 F.4th 206 (5th Cir. 2025) .................................................................9

*SEC v. Beck,*
No. 2:22-CV-00812-FWS, 2024 WL 1626280 (C.D. Cal. Apr. 1, 2024)...........6

*SEC v. Bronson,*
602 F. Supp. 3d 599 (S.D.N.Y. 2022),
*aff'd*, No. 22-1045-CV, 2022 WL 5237474 (2d Cir. Oct. 6, 2022),
*cert. denied*, 143 S. Ct. 2643 (2023)......................................................4

*SEC v. Casey,*
No. 22-CV-483-RSH, 2025 WL 2617076 (S.D. Cal. Sept. 10, 2025)............7, 8

*SEC v. Chappell,*
107 F.4th 114 (3d Cir. 2024) ..............................................................8, 9

*SEC v. CKB168 Holdings, Ltd.,*
2022 U.S. Dist. LEXIS 144893 (E.D.N.Y. Aug. 12, 2022) ..............................10

*SEC v. CMKM Diamonds, Inc.,*
635 F. Supp. 2d 1185 (D. Nev. 2009) ....................................................4

*SEC v. First City Financial Corp., Ltd.,*
890 F.2d 1215, 1232 (D.C. Cir. 1989)....................................................3

*SEC v. First Pac. Bancorp,*
142 F.3d 1186 (9th Cir. 1998) ..............................................................12

*SEC v. Forester,*
No. CV 20-9813 DMG (AFMx), 2021 U.S. Dist. LEXIS 202467
(C.D. Cal. Sept. 17, 2021) ..............................................................10, 11

*SEC v. Gentile*,
   939 F.3d 549 (3d Cir. 2019) ................................................................8

*SEC v. Hurd*,
   No. CV 13-04464-RGK (JCGx), 2014 U.S. Dist. LEXIS 198897
   (C.D. Cal. Feb. 21, 2014) ................................................................10

*SEC v. Janus Spectrum LLC*,
   811 Fed. Appx. 432 (9th Cir. 2020) ...................................................5

*SEC v. JT Wallenbrock*, 440 F.3d 1109 (9th Cir. 2006) .........................3

*SEC v. Manor Nursing Centers, Inc.*,
   458 F.2d 1082 (2d Cir. 1972) .............................................................9

*SEC v. Mattera*,
   No. 11 Civ. 8323 (PKC), 2013 U.S. Dist. LEXIS 174163
   (S.D.N.Y. Dec. 9, 2013) ..................................................................10

*SEC v. Mizrahi*,
   No. CV 19-2284 PA, 2020 WL 6114913 (C.D. Cal. Oct. 5, 2020) ...................4

*SEC v. Moleski*,
   No. 2:21-CV-01065-SVW-E, 2021 WL 6752254
   (C.D. Cal. Oct. 21, 2021) ..................................................9, 10, 11

*SEC v. Murphy*,
   626 F.2d 633 (9th Cir. 1980) .............................................6, 7, 8, 12

*SEC v. Nguyen*,
   No. 8:19-CV-01174-SVW, 2024 U.S. Dist. LEXIS 124860
   (C.D. Cal. Feb. 23, 2024) ................................................................10

*SEC v. Patel*,
   61 F.3d 137 (2d Cir. 1995) ...............................................................12

*SEC v. Platforms Wireless Int'l Corp.*,
   617 F.3d 1072 (9th Cir. 2010) .......................................................3, 5

*SEC v. Premier Holding Corp.*,
   No. 21-55249, 2022 WL 541194 (9th Cir. Feb. 23, 2022)..........................3

*SEC v. Rind*,
   991 F.2d 1486 (9th Cir. 1993) ...........................................................3

*SEC v. Rodriguez*,
   794 F. Supp. 3d 489 (W.D. Tex. 2025) ...............................................8

*SEC v. Sharp*,
   737 F. Supp. 3d 66 (D. Mass. 2024)..................................................10

*SEC v. Smith*,
   CV 20-1056 PA 2020 U.S. Dist. LEXIS 194614,
   (C.D. Cal. Oct. 19, 2020)..................................................................5

iii

*SEC v. Spartan Sec. Grp., Ltd.*,
620 F. Supp. 3d 1207 (M.D. Fla. 2022), *aff'd*, 164 F.4th 1231
(11th Cir. 2026) ...................................................................................4

*SEC v. Wall*,
No. 2:19-CV-00139-JHR, 2020 U.S. Dist. LEXIS 56152
(D. Me. Mar. 31, 2020).........................................................................10

*SEC v. Wellness Matrix Grp., Inc.*,
2023 U.S. Dist. LEXIS 143527 (C.D. Cal. Aug. 10, 2023) ........................10, 11

*Starbucks Corp. v. McKinney*,
602 U.S. 339 (2024)................................................................................7

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)................................................................................7, 8

**FEDERAL STATUTES**

26 U.S.C. §6621(a)(2)............................................................................4

**Securities Act of 1933**

Section 17(a)
[15 U.S.C. § 77q(a)] ....................................................................2, 8, 9

Section 17(a)(1)
[15 U.S.C. § 77q(a)(1)].................................................................2, 8, 11

Section 17(a)(2)
15 U.S.C. § 77q(a)(2)] ........................................................................2

Section 17(a)(3)
[15 U.S.C. § 77q(a)(3)]........................................................................2, 8

Section 20(b)
[15 U.S.C. § 77t(b)] ............................................................................7

Section 20(d)(2)
[15 U.S.C. § 77t(d)(2)] ........................................................................6

Section 20(e)
[15 U.S.C. § 77t(e)] ...........................................................................11

**Securities Exchange Act of 1934**

Section 10(b)
[15 U.S.C. § 78j(b)] ......................................................................2, 8, 9

Section 12
[15 U.S.C. § 78l]...............................................................................11

Section 15(d)
[15 U.S.C. § 78o].............................................................................11

Section 21(d)
        [15 U.S.C. § 78u(d)] ...........................................................................................3

Section 21(d)(1)
        [15 U.S.C. § 78u(d)(1)] .......................................................................................7

Section 21(d)(2)
        [15 U.S.C. § 78u(d)(2)] .....................................................................................11

Section 21(d)(3)
        [15 U.S.C. § 78u(d)(3)] .......................................................................................3

Section 21(d)(3)(A)(ii)
        [15 U.S.C. § 78u(d)(3)(A)(ii)] ...........................................................................4

Section 21(d)(3)(B)
        [15 U.S.C. § 78u(d)(3)(B)] ..................................................................................6

Section 21(d)(5)
        [15 U.S.C. § 78u(d)(5)] ..................................................................................9, 10

Section 21(d)(7)
        [15 U.S.C. § 78u(d)(7)] ...................................................................................3, 4

**FEDERAL REGULATIONS**

Rule 10b-5
        [17 C.F.R. § 240.10b-5] ................................................................................2, 8, 9

Rule 10b-5(a)
        [17 C.F.R. § 240.10b-5(a)] ...............................................................................2, 8

Rule 10b-5(b)]
        [15 C.F.R. 240.10b-5(b)] .....................................................................................2

Rule 10b-5(c)
        [17 C.F.R. § 240.10b-5(c)] ...............................................................................2, 8

## I.     <u>INTRODUCTION</u>

In November 2025, the Court entered summary judgment on liability against Defendants Vivera Pharmaceuticals, Inc. ("Vivera"), its CEO and Chairman Paul P. Edalat, and EFT Global Holdings, Inc., d/b/a Sentar Pharmaceuticals ("Sentar"), finding that each of the Defendants violated the federal securities laws' antifraud provisions in connection with an offering of Vivera securities from May 2018 to June 2020. Dkt. No. 111 ("MSJ Order"). The SEC now seeks a final judgment against the Defendants (1) ordering all three Defendants to jointly and severally disgorge with prejudgment interest the illicit funds they received in the Vivera offering, (2) imposing a third-tier civil monetary penalty against Edalat, (3) imposing permanent injunctions against future violations of the securities laws on all three Defendants, (4) imposing an injunction against future solicitations of the purchase or sale of securities against Vivera and Edalat, and (5) imposing against Edalat a five-year officer and director bar.

## II.     <u>BACKGROUND</u>

On November 24, 2025, the Court granted the SEC's Motion for Summary Judgment ("MSJ") finding that from May 2018 until June 2020 ("Relevant Period"), Edalat approved Vivera private placement memorandums ("PPMs") and raised approximately $6.7 million from approximately 63 individual investors, based on written representations that Vivera owned an exclusive global license to a sublingual drug-delivery technology for the pharmaceutical use of cannabidiol ("CBD") or tetrahydrocannabinol ("THC") pharmaceutical products that Vivera proposed to develop commercially. (MSJ Order at 4-5.) The Court found that Vivera's claim that it had an exclusive license over this technology was false because Sentar—Edalat's holding company that owned the underlying technology—had already conveyed a similar license to a third party, Alternate Health Corp. and Alternate Health USA Inc. (collectively, "Alternate Health"), back in 2017. (*Id.* at 8.) In fact, Vivera was involved in litigation with Alternate Health over this license agreement, a dispute that Alternate Health ultimately won. (*Id.* at 4.)

1

The Court also found that Edalat made written misrepresentations to Vivera investors regarding how their funds would be used. (*Id.* at 8-9.) Specifically, the offering materials failed to disclose that a significant portion of investor funds were used to pay down a $10 million license fee that Vivera owed to Sentar for the worthless license. (*Id.*)

The Court found that through the PPMs containing these false statements, the Defendants raised approximately $6.7 million from approximately 63 Vivera investors. (*Id.* at 5.) Specifically, the Defendants raised $6,731,768 from investors through the false PPMs and used $4,594,459 in investor proceeds on Vivera's pharmaceutical business. (Peat Decl. ¶¶ 15, 21.) However, Edalat also directed Vivera investors funds to pay $1,808,696 towards the undisclosed license to Edalat's company Sentar and also used $328,613 of investor proceeds on his personal housing and automobile-related purchases. (*Id.* ¶ 20.)

The Court found that the Defendants made these two sets of misrepresentations with scienter and that both sets of misrepresentations were material. (MSJ Order at 9-14.) The Court also found the Defendants engaged in a scheme by, among other things, disseminating the PPMs with material misrepresentations. (*Id.* at 15-16.) The Court held that the Defendants violated the antifraud provisions of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(a)-(c), and Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a)(1)-(3). (*Id.* at 16.)

The Court ordered that the SEC file its motion seeking remedies by December 24, 2025. (MSJ Order at 17.) The Court granted the parties' subsequent stipulation to extend that date to April 20, 2026, to provide the SEC time to obtain remedies authority from the Commission and for the parties to engage in settlement discussions.[1] (Dkt. No. 115.)

///

---

[1] After the Court granted the parties' stipulation, counsel for the Defendants declined to continue to engage in settlement discussions with the SEC. *See* Kam Dec. ¶ 4.

2

## III. ARGUMENT

### A. Defendants Should Disgorge Their Ill-Gotten Gains with Interest.

The SEC seeks disgorgement with prejudgment interest. Disgorgement forces a defendant to surrender his unjust enrichment. *SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993). This Court has "broad equity powers to order the disgorgement of ill-gotten gains obtained through the violation of the securities aws." *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010). In *Liu v. SEC*, the Supreme Court reaffirmed the SEC's authority to seek, and the Court's authority to order, disgorgement as "equitable relief" "that does not exceed a wrongdoer's net profits and is awarded for victims." *Liu v. SEC*, 591 U.S. 71, 74-75 (2020). After the Supreme Court decided *Liu*, Congress amended Section 21(d) of the Exchange Act to add new subsection (d)(7), which expressly authorizes courts to award disgorgement in Commission actions. 15 U.S.C. § 78u(d) (7); *see also* 15 U.S.C. § 78u(d)(3) (providing that in Commission actions brought under the Exchange Act, the district court has jurisdiction "to require disgorgement . . . of any unjust enrichment").

The SEC need only present evidence of a "reasonable approximation" of the defendant's ill-gotten gains. *See Platforms Wireless*, 617 F.3d at 1096; *SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1113-14 (9th Cir. 2006). Once such evidence has been presented by the SEC, the burden shifts to the defendant to "demonstrate that the disgorgement figure was not a reasonable approximation." *Platforms Wireless*, 617 F.3d at 1096, *quoting SEC v. First City Financial Corp., Ltd.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989). As the Ninth Circuit explained:

> We place this burden on the defendants because information is not "obtainable at negligible cost." The defendants are more likely than the SEC to have access to evidence [demonstrating that the SEC's approximation is not reasonable]. . . . [W]e conclude that "the risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty."

*Id.*, *quoting First City*, 890 F.2d at 1231 & 1232; *SEC v. Premier Holding Corp.*, No. 21-55249, 2022 WL 541194 (9th Cir. Feb. 23, 2022) ("Defendants object to the district

3

court's disgorgement calculation, but Defendants bear the burden of proving 'that the disgorgement figure was not a reasonable approximation.'") (citation omitted). In *Liu*, the Supreme Court reaffirmed the "general rule that a defendant is entitled to a deduction for all marginal costs incurred in producing the revenues that are subject to disgorgement." 591 U.S. at 91 (citing Restatement § 51 cmt. *h* (2011)) (emphasis added)

The SEC retained an expert witness who has calculated that the Defendants raised $6,731,768 as a result of their offering during the Relevant Period and opined that the Defendants spent $4,594,459 in business expenses during the Relevant Period. *See* Peat Decl. ¶ 21. Deducting this amount against the total amount raised of $6,731,768 results in $2,137,309 as a reasonable approximation of the Defendants' net profits from their fraud. Therefore, $2,137,309 is the "unjust enrichment" that Defendants received. 15 U.S.C. § 78u(d)(3)(A)(ii).

If these funds are recovered, they could be used to compensate investors for their losses. *See SEC v. Mizrahi*, No. CV 19-2284 PA, 2020 WL 6114913, at *2 (C.D. Cal. Oct. 5, 2020) (ordering disgorgement "for the benefit of investors"). Even if a distribution to investors were not feasible, disgorgement is still appropriate under 15 U.S.C. § 78u(d)(7), which unlike like the provision at issue in *Liu*, does not require that disgorgement be "for the benefit of investors." *See SEC v. Bronson*, 602 F. Supp. 3d 599, 618 (S.D.N.Y. 2022) (finding disgorgement order consistent with *Liu* where funds were to be sent to U.S. Treasury), *aff'd*, No. 22-1045-CV, 2022 WL 5237474 (2d Cir. Oct. 6, 2022), *cert. denied*, 143 S. Ct. 2643 (2023); *SEC v. Spartan Sec. Grp., Ltd.*, 620 F. Supp. 3d 1207, 1224-25 (M.D. Fla. 2022) (ordering disgorgement where funds would be sent to Treasury and collecting cases), *aff'd*, 164 F.4th 1231, (11th Cir. 2026).

Defendants should also pay prejudgment interest on the disgorgement amount. Courts order prejudgment interest to ensure that the wrongdoer does not profit from his illegal activity. *See SEC v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d 1185, 1190 (D. Nev. 2009). Prejudgment interest on $2,137,309, using the IRS rate of interest on tax underpayments set forth at 26 U.S.C. § 6621(a)(2), is $156,494.89, for a total of

$2,293,803.89 in disgorgement and prejudgment interest.  Kam Decl. ¶ 5; *see also Platforms Wireless*, 617 F.3d at 1099 (affirming use of the tax underpayment rate in calculating prejudgment interest).

Finally, the Court should hold the three Defendants jointly and severally liable for disgorgement and prejudgment interest.  *Liu* held that courts have "flexibility" to impose joint and several liability against "partners" engaged in "concerted wrongdoing." *Liu*, 591 U.S. at 90-91; *see also SEC v. Janus Spectrum LLC*, 811 Fed. Appx. 432, 433-34 (9th Cir. 2020) ("[T]he imposition of joint and several liability for a disgorgement award is permissible so long as it is 'consistent with equitable principles.'") (quoting *Liu*, 491 U.S. at 90); *SEC v. Smith*, CV 20-1056 PA, 2020 WL 6712257, at *3 (C.D. Cal. Oct. 19, 2020) (imposing joint and several liability for disgorgement where entities were under principal's common control).

That standard is met here.  As this Court found in its MSJ Order, during the Relevant Period, Edalat controlled both Vivera and Sentar, serving as controlling shareholder of both entities, while also serving as Vivera's CEO.  As such, Edalat directed the offerings at issue here.  (MSJ Order at 13.)  He also approved the offering materials that contained the false representations.  (*Id.* at 4.)  Finally, he directed the bank accounts of both Vivera and Sentar and directed investor funds from Vivera to Sentar. (*Id.* at 12.; Peat Dec. ¶ 9-10.)  As such, apportionment between the Defendants would not be possible.  These entities, therefore, should be jointly and severally liable with Edalat for the disgorgement and prejudgment interest amounts.

**B.    Edalat Should Pay a Civil Penalty.**

Along with disgorgement, Edalat should pay a civil monetary penalty.  Congress authorized civil penalties "to further the dual goals of punishment of the individual violator and deterrence of future violations." *Off. Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 81 (2d Cir. 2006) (internal quotation marks omitted).  Both the Securities Act and the Exchange Act provide that, "[f]or each violation," the penalty "shall be determined by the court in light of the facts and

circumstances" in an amount "not [to] exceed the greater of" a fixed statutory amount or "the gross amount of pecuniary gain to such defendant as a result of the violation."  15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B).

When determining the amount of civil penalties to impose, courts in the Ninth Circuit consider such factors as the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of the conduct; the likelihood, because of defendant's professional occupation, that future violations might occur; and the sincerity of assurances against future violations.  *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980); *SEC v. Beck*, No. 2:22-CV-00812-FWS, 2024 WL 1626280, at *16 (C.D. Cal. Apr. 1, 2024) ("[C]ourts apply the factors set forth in [*Murphy*] to determine the proper penalty.") (internal quotation marks and citation omitted)).

These factors favor a third-tier penalty against Edalat of $236,451, the statutory maximum.  (Kam Decl. ¶ 6).  First, as this Court has found, Edalat acted with a high degree of scienter in defrauding investors.  (MSJ Order at 13.)  He authorized the Vivera PPMs despite knowing that they contained material misstatements regarding Vivera having an exclusive license to Sentar's technology and how investor funds would be used.  (*Id.* at 3.)  Second, Edalat's violations were not isolated but persisted over the course of years.  (*Id.* at 11.)  *See SEC v. Alexander*, 115 F. Supp. 3d 1071, 1086 (N.D. Cal. 2015) (violations arising from single scheme "that spanned nearly two years and impacted dozens of investors" were recurring in nature).  Third, Edalat has failed to recognize the wrongful nature of his conduct and has continued to insist that he was unaware of the misrepresentations or that others were responsible for the misstatements. (MSJ Order at 8-9.)  Fourth, Edalat created a substantial risk of loss to investors by raising millions of dollars in investor funds based on false and misleading offering materials.  (*Id.* at 5.)  Finally, Edalat misappropriated investor funds for his personal use.  (*Id.* at 5.)  Therefore, a third-tier penalty is appropriate.

///

6

## C.   Defendants Should Be Permanently Enjoined.

Both the Securities Act and the Exchange Act provide that "upon a proper showing" a permanent injunction "shall be granted" in SEC enforcement actions. 15 U.S.C. §§ 77t(b), 78u(d)(1).  When considering permanent injunctions in SEC enforcement actions, courts in the Ninth Circuit have held that the SEC must show a reasonable likelihood of future violations of the securities laws consider the same five factors set forth in *Murphy* that inform the imposition of a civil penalty: the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of the conduct; the likelihood, because of defendant's occupation, that future violations may occur; and the sincerity of defendant's assurances against future violations.  *Murphy*, 626 F.2d at 655.  *See also SEC v. Barry*, 146 F.4th 1242, 1265 (9th Cir. 2025).

Recently, the Supreme Court clarified that, "absent a clear command from Congress," the traditional four factors for injunctive relief—success on the merits, irreparable harm absent an injunction, the balance of equities, and the public interest—should be applied to all requests for injunctive relief.  *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345-46 (2024); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008) (describing factors); *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success").[2]

Regardless of whether the *Murphy* factors are sufficient or whether they are applied in the context of the irreparable harm prong of the *Winter* standard, permanent injunctions are appropriate here.  *See, e.g., SEC v. Casey*, No. 22-CV-483-RSH, 2025 WL 2617076, at *3 (S.D. Cal. Sept. 10, 2025) (applying *Winter* standard and considering

---

[2] The Ninth Circuit has not suggested that Starbucks abrogated its prior precedent on permanent injunctions in SEC actions.  In fact, as recently as August 2025, the Ninth Circuit affirmed permanent injunctions applying the *Murphy* standard.  *Barry*, 146 F.4th at 1265.

*Murphy* factors in finding irreparable harm to enter permanent injunctions). For the reasons set forth below, the SEC requests that the Court enter permanent injunctions against Defendants Edalat and Vivera against violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5, and against Defendant Sentar for violations of Section 17(a)(1) and (3) of the Securities Act and Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c).

### 1. Success on the merits

The SEC has succeeded on the merits of its claims. As the Court concluded, Edalat, Vivera, and Sentar violated the antifraud provisions of the Securities Act and the Exchange Act. (*See* Dkt. No. 111.) This satisfies the first *Winter* factor. *See Casey*, 2025 WL 2617076, at *3.

### 2. Irreparable harm

Given the continued vitality of the *Murphy* factors as shown in the Ninth Circuit's *Barry* decision, a likelihood of future violations of the securities laws constitutes irreparable harm warranting injunctive relief. *Barry*, 146 F.4th at 1265; *see also Casey*, 2025 WL 2617076, at *3; *SEC v. Rodriguez*, 794 F. Supp. 3d 489, at 492-93 (W.D. Tex. 2025). As other courts have recognized, "a cognizable risk of future harm" in the form of future violations of the securities laws satisfies the traditional irreparable harm requirement when the SEC seeks injunctive relief. *SEC v. Chappell*, 107 F.4th 114, 128-29 (3d Cir. 2024) (quoting *SEC v. Gentile*, 939 F.3d 549, 556 (3d Cir. 2019)). Finally, "[t]he existence of past violations may give rise to an inference that there will be future violations; and the fact that the defendant is currently complying with the securities laws does not preclude an injunction." *Murphy*, 626 F.2d at 655.

For the same reasons the Court should impose a third-tier penalty, the Court should permanently enjoin Edalat. He acted with a high degree of scienter and distributed PPMs containing false representations. (MSJ Order at 13-15.) His violations were not isolated but persisted over the course of years. (*Id.* at 11.) He has failed to recognize the wrongful nature of his conduct, denying that he engaged in fraudulent conduct. (*Id.* at 8-

9.)  Given his failure to recognize the wrongfulness of his conduct, any assurances against future violations are not persuasive.  Edalat also attempted to take Vivera public in a separate IPO.  (*Id.* at 2.)  Finally, Edalat controlled both Vivera and Sentar, through which he engaged in a fraudulent course of conduct.  (*Id.* at 13.)  In sum, the Defendants are likely to violate the securities laws again.

### 3.  Balance of equities

The balance of equities favors the SEC because "investors need[ ] the protection of an injunction" despite the Defendants' private interests, especially considering the likelihood of future violations.  *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1102 (2d Cir. 1972).  The Defendants' interests in avoiding an injunction against future violations are minimal.

### 4.  Public interest

Similarly, the public interest favors the SEC.  "As a practical matter, where the Commission demonstrates both actual success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff."  *Chappell*, 107 F.4th at 139 (quotation omitted); *SEC v. Barton*, 135 F.4th 206, 227 (5th Cir. 2025) ("seeking to protect the interests of defrauded investors and uphold federal securities law is in the public interest").  Accordingly, the Court should permanently enjoin the Defendants from their respective future violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5.

### D.  A Conduct-Based Injunction against Edalat and Vivera Is Appropriate.

In addition, the Court should exercise its equitable authority under Exchange Act Section 21(d)(5) to issue a permanent conduct-based injunction against Edalat and Vivera.  15 U.S.C. § 78u(d)(5) (authorizing "any equitable relief that may be appropriate or necessary for the benefit of investors"); *see also SEC v. Moleski*, No. 2:21-CV-01065-SVW-E, 2021 WL 6752254, at *5 (C.D. Cal. Oct. 21, 2021).  The analysis for the SEC's request for permanent injunctions applies equally to its request for conduct-based injunctions.  *See SEC v. Wellness Matrix Grp., Inc.*, 2023 U.S. Dist. LEXIS 143527, at

*19 (C.D. Cal. Aug. 10, 2023); *SEC v. CKB168 Holdings, Ltd.*, 2022 U.S. Dist. LEXIS 144893, at *9 (E.D.N.Y. Aug. 12, 2022).

Courts frequently impose such injunctions in SEC actions. *See*, *e.g.*, *SEC v. Sharp*, 737 F. Supp. 3d 66, 78 (D. Mass. 2024) (enjoining defendants from participating in the issuance, purchase, offer or sale of any security; provided, however, that such injunction shall not prevent defendants from purchasing or selling securities listed on a national exchange for their own personal accounts); *SEC v. Nguyen*, No. 8:19-CV-01174-SVW, 2024 U.S. Dist. LEXIS 124860, at *9 (C.D. Cal. Feb. 23, 2024) (prohibiting defendant from directly or indirectly accessing any securities brokerage account of any third party, including doing so with the consent of the account holder); *Wellness Matrix Grp*, 2023 U.S. Dist. LEXIS 143527, at *19 (enjoining defendant from directly or indirectly participating in the issuance, purchase, offer or sale of any security); *CKB168 Holdings*, 2022 U.S. Dist. LEXIS 144893, at **26-27 (E.D.N.Y. Aug. 12, 2022) (prohibiting defendants from, directly or indirectly, operating or participating in any marketing or sales program involving a security); *Moleski*, 2021 WL 6752254 at *6-7 (enjoining defendant from, directly or indirectly, soliciting any person or entity to purchase or sell any security); *SEC v. Forester*, No. CV 20-9813 DMG (AFMx), 2021 U.S. Dist. LEXIS 202467, at *15 (C.D. Cal. Sept. 17, 2021) (enjoining defendant from "soliciting any person or entity to purchase or sell any security"); *SEC v. Wall*, No. 2:19-CV-00139-JHR, 2020 U.S. Dist. LEXIS 56152 at **26-27 (D. Me. Mar. 31, 2020) (enjoining defendants, directly or indirectly, from participating in the issuance, purchase, offer or sale of any security other than for their personal accounts); *SEC v. Baccam*, No. ED CV 17-0172 SJO (SPx), 2017 U.S. Dist. LEXIS 88450, at *32 (C.D. Cal. June 8, 2017) (similar injunction); *SEC v. Hurd*, No. CV 13-04464-RGK (JCGx), 2014 U.S. Dist. LEXIS 198897, at * 23 (C.D. Cal. Feb. 21, 2014) (similar injunction); *SEC v. Mattera*, No. 11 Civ. 8323 (PKC), 2013 U.S. Dist. LEXIS 174163, at *50 (S.D.N.Y. Dec. 9, 2013) (similar injunction); *see also*, 15 U.S.C. § 78u(d)(5) (authorizing "any equitable relief that may be appropriate or necessary for the benefit of investors").

Here, the SEC seeks a conduct-based injunction that would permanently enjoin Edalat and Vivera from, directly or indirectly, including, but not limited to, through any entity owned or controlled by such Defendant, participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent Edalat from purchasing or selling securities for his own personal account.  As noted above, courts have imposed similar injunctions under these facts.  *See, e.g., Wellness Matrix*, 2023 U.S. Dist. LEXIS 143527 at *19; *Moleski*, 2021 WL 6752254 at *6-7; *Forester*, 2021 U.S. Dist. LEXIS 202467, at *15

This conduct-based injunction tailored as to Edalat and Vivera is particularly appropriate as it would prevent them from conducting an offering similar to the one in this case, which they used to fraudulently raise over $6.7 million from investors through PPMs containing multiple misleading statements.  (MSJ Order at 5.)  Without such a conduct-based injunction, there is a reasonable likelihood that Defendants will continue to offer securities in a manner that violates the securities laws while planning to argue, if challenged, that they were unaware that such offerings were illegal.

**E.      Edalat Should Be Prohibited from Serving as an Officer or Director for Five Years.**

The SEC also requests that the Court bar Edalat from serving as an officer or director of a public reporting company for five years.  Section 20(e) of the Securities Act and Section 21(d)(2) of the Exchange Act authorize the Court to bar any person who violated Section 17(a)(1) of the Securities Act or Section 10(b) of the Exchange Act, respectively – that is, in fraud cases involving scienter – from acting as an officer or director of an issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act, if the person's conduct demonstrates "unfitness to serve as an officer or director" of an issuer.[3]  In determining whether to order such a bar the Court may consider the

---

[3] The Court also has authority to impose an officer and director bar under its inherent equitable powers.  *SEC v. Gault*, 751 Fed. Appx. 974, 980 (9th Cir. 2018).

following non-exclusive factors: "(1) the 'egregiousness' of the underlying securities law violation; (2) the defendant's 'repeat offender' status; (3) the defendant's 'role' or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998) (quoting *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995)).

As with the *Murphy* factors, Edalat's unfitness to serve as an officer or director of a public company is shown by his orchestration—with a high degree of scienter—of a multi-year fraud in which he made material misrepresentations to investors and personally misappropriated investor funds. (MSJ Order at 13-15.) Edalat served on the board of directors of Vivera. (*Id.* at 2.) Edalat also attempted to take Vivera public in a separate initial public offering. (*Id.* at 9.) His actions were lucrative and resulted in substantial ill-gotten gains. (*Id.* at 5.) If permitted to act as an officer or director of a public company, there is a high likelihood that Edalat would again abuse his position for his personal financial benefit and to the detriment of the investing public.

## IV.  **CONCLUSION**

For these reasons, the Court should hold Defendants accountable for their violations of the federal securities laws and order the following:

- Disgorgement of $2,137,309 plus prejudgment interest of $156,494.89, jointly and severally between Edalat, Vivera, and Sentar;

- A civil penalty of $236,451 against Edalat;

- Permanent injunctions prohibiting Edalat and Vivera from violating Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5, and prohibiting Sentar from violating Section 17(a)(1) and (3) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c);

- A conduct-based injunction prohibiting Edalat and Vivera from, directly or indirectly, including, but not limited to, through any entity owned or

12

controlled by such Defendant, participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent Edalat from purchasing or selling securities for his own personal account; and

- Barring Edalat from serving as an officer or director of a public company for the next five years.

The SEC requests that final judgments providing for this relief be entered in the form attached to this motion.

Dated:  April 20, 2026

Respectfully submitted,

/s/ Stephen Kam
Stephen T. Kam
Robert C. Stillwell
Attorneys for Plaintiff
Securities and Exchange Commission

13

## L.R. 11-6.2. CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Securities and Exchange Commission, certifies that this brief contains 4,208 words, which complies with the word limit of L.R. 11-6.1

/s/ Stephen Kam
Stephen Kam

14

## **PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

> U.S. SECURITIES AND EXCHANGE COMMISSION,
> 444 S. Flower Street, Suite 900, Los Angeles, California 90071
> Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On April 20, 2026, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR REMEDIES AND ENTRY OF FINAL JUDGMENTS AGAINST DEFENDANTS VIVERA PHARMACEUTICALS, INC., EFT GLOBAL HOLDINGS, INC., d/b/a SENTAR PHARMACEUTICALS, AND PAUL P. EDALAT** on all the parties to this action addressed as stated on the attached service list:

☐  **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐  **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐  **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐  **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐  **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐  **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒  **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐  **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: <u>April 20, 2026</u>          <u>*/s/ Stephen Kam*</u>

Stephen Kam

15

*SEC v. Vivera Pharmaceuticals, Inc., et al*
**United States District Court—Central District of California**
**Case No. 8:22-cv-01792-FWS-DFM**

**SERVICE LIST**

John A. Sten, Esq. **(served by CM/ECF)**
Byrd Campbell, P.A.
75 Arlington Street, Suite 500
Boston, MA 02116
Email:  jsten@byrdcampbell.com
*Attorney for Defendant Vivera Pharmaceuticals, Inc.*

Saied Kashani, Esq. **(served by CM/ECF)**
800 W. 1st Street, Suite 400
Los Angeles, CA 90012
Email:  saiedkashani@gmail.com; saiedkashani@googlemail.com
*Attorney for Defendants Vivera Pharmaceuticals, Inc., EFT Global Holdings, Inc., d/b/a Sentar Pharmaceuticals and Paul P. Edalat*

16